You may proceed. Yes this is a appeal from a BIA decision which was which was a review of an asylum application presented by the respondents. The brief that was that was filed by the previous attorney in the BIA appeal basically discussed a ineffective counsel argument. They did not argue the merits of the case in their brief. When it came before the BIA, the BIA made a decision in which they actually determined that the basis for the denial in the immigration court of the applications for asylum and withholding and other relief was because the respondent did not meet the burden of proving past or feared future prosecution, despite the fact that that was never discussed or brought up by the previous counsel in their appeal. So what's your point? Our point is that they went beyond the scope of the appeal. The appeal was basically based on the failure of the legislature. Well the board, in their discretion, they reached the merits, correct? Yes. And your brief to us reaches the merits as well. Yes, we do. We feel that the board should have given counsel and the respondents opportunity to discuss the merits or to present additional briefing. Well, I assume your argument is directed at the government's claim that you essentially waived the issues here, the merits issues here? I don't believe it was waived. The respondents relied on their counsel. No, in your brief to us. Yes. I believe that they didn't discuss or brought up that those issues of the merits at all in the brief by the prior counsel in the BIA appeal. Okay. So you're saying that's your excuse for, but here we are and the BIA has ruled on the merits of the claim. So shouldn't we be discussing your challenge to some of what the BIA held in this claim? Well, I think that the BIA should have provided guidance to counsel or respondents to brief this issue if they were going to make a decision on it. They made a decision on the application for assignment. Okay. So they did. So what's the defects in the BIA's decision that you want to argue to us? Well, I guess the main argument is that they went beyond the scope of the appeal in making this decision. Okay. So your brief to us, I mean, so in your brief to us. Yes. You here, Section 6, you list a number of arguments, right?  Now, let me ask you this. Did you write those arguments? Yes. So do you want to elaborate on any of them? Well, I guess the first parts of the argument regarding the probability that they gave a chance at the BIA to argue these points and to — Well, you're here arguing to us. Yes. The BIA decided them. So that's kind of an exception. When they argue waiver, we say, well, the BIA decided them. You had an opportunity to address them in the red brief. So now we're here. Let's decide them. Yes. Well, I believe that as far as their eligibility for the relief that they were seeking, there was some issue that they were people who might have testified against criminals in their home country. I thought they did testify, witnessed, helped arrest, and appeared in open court against the person who threatened them that you will pay.  But the trial, the immigration court judge basically stated that it was not clear, that they did not belong to a specific enough group because they were people who could have testified. That was the way he, the judge — Okay. That was how the BIA, the IJF — Not in the BIA, in the previous decision. Okay. But we have Henriquez-Rivas, which I think was an en banc case. I think I was on that panel. That talks about that being a socially distinct particular social group. But he actually did testify. He showed up in court. We're not arguing with you. We're not saying that he didn't. I'm trying to show you why you have a good argument. I'm giving you a case that supports your position. Right. I think you even cite Henriquez. Yeah. I'm pretty sure you cited Henriquez.  I don't quite understand where you're headed or what the point is you want to make with us. Are you kind of seeking a total remand do-over thing because you didn't get to brief it properly before the BIA? Yes. That's basically our argument. That's what you want? Yes. We wanted it remanded because that issue was never — Like a Lozada argument? Well, I mean, it was clear from the BIA brief that the issue of the eligibility for the relief was not discussed at all. It was really a discussion of a motion to remand based on ineffective counsel. But they didn't go into the actual details of the eligibility for the relief. The brief was very short. So we're still talking about the brief to the BIA?  By former counsel? Yeah, by former counsel. There was two former counsels. There was an original counsel for the individual hearing, and then there was another counsel who made a Lozada claim against a prior counsel and then did the BIA appeal. So I'm the third counsel in this case. So your main argument is IAC, the ineffective assistance of counsel, and you did get a chance to brief the mayors to the BIA. But the BIA ultimately ended up addressing the merits. Yes, that's essentially what happened. And when you petitioned to us for review, you addressed those issues on the merits. Yes, I did. Just to show the court that — So you don't want us to pay any attention to those arguments? No, we do. I mean, but that wasn't what the BIA appeal was about, though. Okay, well, I got that point. Yeah. Well, what's your strongest case on the merits? On the merits is that he actually went above and beyond most people who were victims of crimes. He went to the police. He identified the culprits. He agreed to testify. He actually showed up at the — at the courthouse. He asked the police and the court if his face could be covered. They refused to cover his face. The defendants saw him at the court. He was so afraid that he even took the license plates off his motorcycle when he went to the courthouse, but he still showed up. But in a way, doesn't that potentially undermine your client's case in terms of show the government's willing and able to go after people? No. Yes and no, because they failed to protect him, even though he cooperated with the government. They prosecuted three of the four. I think the fourth one is that he was juvenile, so he was released. But the other three, they were prosecuted and presumably detained. I understand that they didn't cover his face, but they still prosecuted the perpetrators. They did, but afterwards, he was facing threats. There were gang members who came and basically pointed finger art symbols to him that he would die. But on that one, he didn't report that to the police. I mean, I guess we don't know if he reported that to the police. They may have arrested those people as well. I don't believe they were arrested. Because he never reported them. Yeah, I believe he decided to flee after that and go into hiding and then leave the country. That was what happened. Because he realized after the first trial that the government would not protect him, even if he went and testified against these subsequent people. Where did you understand the hand gesture to be? The hand gesture? The hand gesture. Could you figure out from the testimony? Well, he and the spouse testified that there were common gestures indicating that you were going to die. It could have been something like a finger across the throat or something, but it wasn't described in the testimony. Yeah, I couldn't figure out what it was, exactly what it was. Yeah, it wasn't exactly. But he did testify that it was very clear what the gesture indicated to everyone. And so if he had reported the second incident, it would still put him in the same situation. He was dealing with a large group of criminal individuals, not a single person or a small band. And he could not get protection anywhere in the country. So, and I think his activities with the government would also indicate some political action or opinion because it shows that he is a very anti-gang, anti-criminal person in a country where at that time there was no law enforcement, very minimal protection for the people. The gangs were running rampant at the time. We feel that there should have been more consideration given to his particular actions in conjunction with the government. All right. Thank you, counsel. You're over your time. All right. Thank you. All right. Ms. Aldana. Good morning, your honors. May it please the court. Sorrell Aldana on behalf of the attorney general. The government asked the court to deny the petition for review as petitioners have waived various dispositive issues. The first being the ineffective assistance claim within their opening brief. Petitioners do not challenge the board's decision. Second being nexus in their opening brief. Petitioners only assert to a single sentence citing to this court's decision and- Despite what counsel just said, if you read his brief, I mean, he does touch on all the issues. It's just kind of disjointed. Well, he touches on the cognizability of the social groups. Yeah, he does. He does that. But he also touches on nexus and on- Well, based on this- Unable and unwilling and unable. He touches on it, your honor. Yeah, he does. I mean, it's sufficient to raise. I mean, I got the points of what he was trying to make when I read the brief. Well, even if the court were to consider that the issues weren't waived, then based on the merits, substantial evidence supports the agency's decision regarding nexus. Specifically, petitioner's nexus claim relies on four social groups. Three of those groups are pertaining to him being a witness in court and the fourth being familial status. Therefore, the first incident of the phone robbery would not even apply to three of those groups because he was not yet a member. And the record is clear that the first incident was simply criminal motives and did not relate to his familial status. And the second incident- I'm sorry. I was just going to say, so I don't understand his claim to be- Well, maybe he did make a claim to pass persecution, you know, that he suffered persecution rising to the level of- the harm rising to the level of persecution. I thought his claim was primarily- the best way to look at his claim as I understood it was future persecution, fear, because he testified. Yes. Or I don't know, you know, testified or appeared in court, cooperated with the police, and it was known what he did. And so he says that I'm a member, you know, that's my- that's the protected group now that I'm now in. And the threats are because of that, the gesture. So it was- And if you look at the record evidence, I mean, the record- the evidence about what's going on in El Salvador at the time was not very good about- with respect to people who cooperated with the police and who testified, you know, who in any way cooperated. The evidence is- the record evidence is, you know, leaves a lot to be desired about what was going on down there. Your Honor, but the record evidence doesn't compel the conclusion that the second incident with the hand gesture was a result of him being a witness or identifying- Well, there's a lot of circumstantial evidence that it was. That incident took place in the same place as the first one, generally, outside his wife's place of work. But the petitioner- She's on the motorcycle. There's gang, you know, there's a lot of- and it doesn't look like the board really considered that. Well, there's also evidence indicating that petitioner stated that he didn't see the faces of the individuals who did the hand gesture. He also stated that three of the- his- the initial assailants were still within criminal proceedings, so it could not have been them. So it's- the record just- One of them was released, the young kid. The minor. He was supposed to report back about every three months. Correct, Your Honor. But the- at that point, the petitioner also did not report the incident to the police. Right, the second- Yeah, the second, the hand gesture. The hand gesture, whatever it was. Yeah. Therefore, the record doesn't- also doesn't compel that the government would be unable and willing to protect him, especially in light of the fact that they arrested the individuals very swiftly. There's a lot in the- you know, there was a lot- he actually put a lot in the record, whoever his counsel was, about what was going on in El Salvador. There was also country conditions evidencing that the Salvadoran government was taking significant strides to- Well, but we have case law that says, you know, that even though countries maybe either, you know, take steps to protect individuals, that, you know, you have to look at what's going on on the ground. I forget which case that is. Madrugal, is that the one that we talked about? You've got to look at what's actually happening. But there's- The record evidence here, you know, is pretty clear. I mean- I would argue that the record evidence is clear that there was no nexus pertaining to- and in this case, that it's far too speculative to conclude that the hand gesture was a result of him identifying individuals in court. He testified he didn't even witness. He just answered one question and identified the individuals in court. And then relating- He testified that he encountered them in the hallway outside. That they saw his face. Yes. Yes, Your Honor. But we don't know who the individuals were who did this hand gesture. We're not even fully clear on what the hand gesture really means. So it's just insufficient evidence to compel an opposite conclusion in this case. What do we make of the board's- of the IJ and the board's decision on credibility? I believe they claimed that he was credible or they ruled that- The board did, but the IJ said, I'm not making an express- I'm not going to find him not credible. But he didn't find him- he didn't expressly say, I find him credible. But the BIA said the IJ found him credible. What do you make of all that? Well, the immigration judge still reviewed the evidence and determined even if he wasn't credible, then- If he was credible. If he- Even if he was credible, yes. And the board found him credible. The board said the IJ found him credible. Correct. So we would conclude that the credibility doesn't affect the outcome of this case. Because the IJ reviewed the evidence despite the credibility. Whether or not he was credible or not, the immigration judge reviewed the evidence despite that. And the board did as well in their own way. Regarding the- So when I look at his testimony, I should take his testimony as credible? Yes, Your Honor. Based on the board's decision. But again, I would argue that the evidence does not compel an opposite conclusion here. There's no nexus. There's no government unable and unwilling. The record doesn't demonstrate how the government failed here. When petitioner could have- When he did avail himself to local authorities, they acted swiftly. And so substantial evidence supports the agency's decision on those issues. Nonetheless, the government's position is still that the petitioner waived those issues. Okay, I got it. Regarding the due process claim, petitioner cites a Supreme Court decision that is completely inapplicable in this case. As well as the board did not abuse its discretion in addressing the merits, the board did not radically transform the case by addressing issues that weren't raised. And also, the board addressed petitioner's claims, which were the ineffective assistance. So the court should not remand on this basis. Instead, the court should deny the petition for review. Anything else? Okay, thank you, counsel. All right, so this case will be submitted. Martinez-Ortiz v. Bondi is submitted.
judges: WARDLAW, PAEZ, LEE